**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          sbogdanovich@bursor.com
          ehorne@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BRIAN HONG, individually and on behalf of all others similarly situated,

                              Plaintiff,

     v.

STUBHUB, INC.,

                              Defendant.

Case No.   2:24-cv-3318

**CLASS ACTION COMPLAINT**

<u>JURY TRIAL DEMANDED</u>

Plaintiff Brian Hong ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against StubHub, Inc. ("StubHub" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which is based on personal knowledge.

## **NATURE OF THE ACTION**

1.     StubHub owns and operates StubHub.com, a marketplace where sports fans, concert enthusiasts, and theatregoers can buy and sell tickets.  To monetize its platform, Defendant collects a fee when each ticket is sold.

2.     StubHub provides users the opportunity to use the "Filters" feature while perusing tickets for an event, to narrow the scope of the tickets listed.  For example, a user can apply an "Estimated Fees Filter" to filter for a specific price range, the distance the seat is from the stage, or to view the tickets' "prices with estimated fees."

3.     That is an intentionally misleading statement.  As explained by Merriam-Webster dictionary, the word estimate "implies a judgment, considered or casual, that precedes or takes the place of actual measuring or counting." Online Dictionary (2024), https://www.merriam-webster.com/dictionary/estimate (last accessed April 18, 2024).  However, on StubHub.com, there is no judgment to be had.  StubHub knows exactly how much it will tack on in fees.  And when users turn on the Estimated Fees Filter, Defendant consistently and systematically understates the estimated fees it charges users according to a strict computer algorithm.

4.     After running over a hundred ticket selection experiments on StubHub.com, Plaintiff and his counsel discovered StubHub invariably understates the total cost (with estimated fees) of every single ticket quoted at or above $20 by an exact amount of $3 per ticket.  Every single time.  Like clockwork.  And for tickets quoted below $20, StubHub invariably understates their total cost (with

1  estimated fees) by exactly between $2 and $3 per ticket.  Also every single time.

2  Also like clockwork.

3        5.      In other words, StubHub is not estimating anything.  It is

4  misrepresenting the price it claims it can cause tickets to be delivered to customers

5  by a consistent amount.  Worse yet, this bait and switch is made even more deceptive

6  by the fact that the price increases only at the final checkout screen, *after* the

7  customer is put on a prominently displayed 10-minute shot clock to review over a

8  half dozen cluttered screens that inundate them with **colorfully distracting**

9  **information**, *see generally*, figures below, and numerous exhortations like "Great

10 news! You'll be seated together" (just in case customers didn't already know that

11 when they selected their seat locations).  Worse yet, even when customers reach the

12 final checkout screen, the price increase is not obvious and requires quick-witted

13 memory and mental math.  In every screen before the final one, tickets costs are

14 displayed as "each" whereas on the final screen, they are aggregated together.  But

15 customers can't take too long on this screen to determine by how much they are

16 being cheated, because when the clock runs out, they are kicked out and must begin

17 the whole process all over again.  "Your time is up!"  *See below*, p. 14.  Too bad.

18 "**This event is selling fast** for Beyoncé."  *See below*, p. 8.

19       6.      For these reasons, Plaintiff, who purchased tickets from Defendant's

20 website using the Estimated Fees Filter, asserts claims on behalf of himself and

21 similarly situated purchasers for: (1) violation of California's Ticket Sale Law, Cal.

22 Bus. & Prof. Code § 22502.2; (2) violation of California's Unfair Competition Law,

23 Cal. Bus & Prof. Code § 17200, *et seq.*; (3) violation of the Consumers Legal

24 Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (4) violation of California's False

25 Advertising Law, Cal. Bus. & Prof. Code § 1750, *et seq.*; (5) Fraud; and (6) Unjust

26 Enrichment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PARTIES**

7.      Plaintiff Brian Hong is a resident of Sierra Madre, California, who has an intent to remain there, and is therefore a citizen of California.  In May 2023, Plaintiff Hong purchased a ticket to the When We Were Young Festival from StubHub.com, using Guest Checkout.  Prior to his purchase, Plaintiff Hong turned on the Estimated Fees Filter to determine his ticket purchase.  Mr. Hong reasonably relied on Defendant's representations and warranties—as described in detail below—that the initial price presented was the actual price he would eventually pay for the ticket.  Mr. Hong saw those representations prior to the time of purchase, and those representations and warranties were part of the basis of the bargain in that he would not have purchased the ticket, or would not have purchased it on the same terms, if the true facts had been known.

8.      Defendant StubHub, Inc. is incorporated under the laws of the state of Delaware, with its principal place of business in Draper, Utah.

## **JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

10.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contacts with the State of California.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant transacts significant business within this District and because Plaintiff purchased the ticket in this District.

1

**FACTUAL ALLEGATIONS**

2

**Defendant's Checkout Process:**

3      12.      Defendant StubHub owns and operates StubHub.com, which is "the

4   leading marketplace for fans to buy and sell tickets."[1]  While "[i]t's free to list tickets

5   on StubHub," Defendant monetizes its product by "collect[ing] a [] fee" when the

6   ticket is sold.[2]  Defendant enables individuals and organizations—such as "leagues,

7   teams, venues, events or other major third-party companies"—to sell tickets on its

8   website.[3]

9      13.      When perusing tickets for an event, Defendant gives consumers the

10  opportunity to see "prices with estimated fees" (the "Estimated Fees Filter") by

11  toggling the filter on:

12



13

14

15

16

17

18

19

20

21

22

23

24

25  [1] *About Us*, STUBHUB, https://www.stubhub.com/about (last visited April 18, 2024).

26  [2] *StubHub's fees to sell tickets*, STUBHUB,
    https://support.stubhub.com/articles/61000276841-stubhubs-fees-to-sell-tickets (last
27  visited April 18, 2024).

28  [3] eBay Inc., Annual Report (Form 10-K) (Jan. 31, 2020).

---

1
2
3
4
5
6
7
8
9
10
11



12    14.    When a consumer turns the Estimated Fees Filter on, the ticket prices

13  immediately increase.  Thus, when a consumer selects tickets with this filter, the

14  price Defendant lists is purportedly the amount the consumer will pay (*e.g.*, $512 per

15  ticket to Beyoncé):

16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



15.     Once a consumer selects tickets, she is taken to a page that confirms the event, date, location, time, and seats.  Defendant immediately creates a false sense of urgency and scarcity with a large pop-up that appears at the very front and center of the screen telling the consumer she has 10 minutes to complete her purchase.

1
2
3
4
5
6
7
8
9
10



You have 10 minutes to complete your purchase

The price of your tickets will be locked during this time

**Start**

11    16.    After the consumer clicks "Start," she is told her price is locked and the

12  clock starts ticking.

13
14
15
16
17

**Your price is locked!**

Started

18
19
20
21

22    17.    On the first screen, a list of recent orders for the event, the number of

23  people who viewed the event in the past hour, and a notice of the ebb and flow of

24  ticket prices is displayed in various shapes and colors and are more diverse than what

25  one would find within the Amazon rainforest.  These are the same kind of tactics

26  street hustlers use outside stadiums to scalp tickets.  The implication is that

27  consumers better hurry up and press "Continue:"

28

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17

18.     Of course, the consumer must not waste time *actually reading* everything presented to her on this bright and colorful page.  If the website notices consumers are taking too long, another pop-up will appear reminding the consumer she is on the shot clock.



19.     Returning to the main ticket screen, the consumer is then prompted to "confirm" the seat selection:



20.     Next, the consumer must log into a StubHub account *or* proceed as a guest.  From there, the consumer must enter their details, provide the ticket holder's details, select a delivery method, and enter billing information.  And she better hurry up because the clock keeps ticking.  These pages, like above, continue to place a sense of urgency and scarcity on the consumer.  *See* figures below.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



21.     On the last page of the checkout process, Defendant requests payment details and provides the final price.  Notably on this page, Defendant charges consumers more than what Defendant initially advertised.  By way of example, Defendant represented two tickets to Beyoncé for $512 each—which purportedly included all fees.  Once a hopeful concertgoer clicked through *nine* pages and pop-ups, Defendant discreetly increased the price to $1,030 (which is $515 per ticket):

22.     The consumer must not let the clock strike zero.  If she does, the following pop-up appears, kicking her out.



**Dark Patterns and Junk Fees:**

23.     "Dark patterns" are online practices that trick or manipulate consumers into making choices they would not otherwise have made.  In September 2022, the FTC released a report on the rise of dark patterns, which details common practices amongst companies that trick consumers into buying products and giving away personal information.[4]  The FTC calls attention to specific practices, such as:

a) **Scarcity:**

   i.  Creating pressure to buy immediately by creating a false sense of high demand.  *See supra* ("**2233 people viewed this event in the past hour**" and "**This event is selling fast** for Beyoncé").

b) **Urgency:**

   i.  Creating pressure to buy immediately by showing a fake countdown clock that resets.  *See supra* ("**07 : 40** left to complete purchase ").

   ii.  Creating pressure to buy immediately by making false discount claims.  *See supra* (falsely discounting the combined ticket and fees price from $515 to $512).

---

[4] *Bringing Dark Patterns to Light*, FEDERAL TRADE COMMISSION (Sept. 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf.

c) **Obstruction:**

   i.   Keeping shoppers from easily comparing prices by listing the price without disclosing the overall cost. *See supra* (requiring consumers to go through nine pages and pop-ups just to get the real total price).

d) **Information Hiding:**

   i.   Adding hidden fees or other charges that people do not know about. *See supra* ($3 extra dollars per ticket).

  ii.   Advertising only part of a product's total price initially and then imposing additional mandatory charges later in the buying process (*i.e.*, "drip pricing"). *See id.*

e) **Interface Interference:**

   i.   Using style and design to focus consumers' attention on one thing in order to distract, and misdirect, their attention from another. *See supra*, *e.g.*, (placing the countdown timer at the top in larger font than other items on the screen and highlighting the product's scarcity in pink, contrasting text).

  ii.   Using contrasting visual prominence to steer consumers into making a certain selection. *See supra*, *e.g.*, (contrasting the false Estimated Fees Filter with purple).

 iii.   Using bait and switch tactics, where a choice or interaction leads to an unexpected, undesirable outcome. *See supra* (switching the price with fees from $512 to $515).

f) **Coerced Action:**

   i.   Making users create an account or share their information to complete a task via forced registration. *See supra* (needlessly requiring consumers need to give Defendant their information to buy a ticket).

g) **Asymmetric Choice:**

    i.   Preselecting a default that is good for the company, but not the user. *See supra*, (preselecting the false Estimated Fees Filter that understates the price).

24.    The FTC is not the only governing body that is concerned by organizations nickel and diming consumers through manipulative practices. The U.S. Senate Committee on Commerce, Science, and Transportation recognizes the need for more action to protect consumers from "junk fees"—which are fees added on to the price of a product or service after a price is advertised to a consumer or later in the transaction process.[5] In July 2023, the Senate Committee passed the bipartisan TICKET Act, sending the legislation to the full Senate.[6] If enacted, the TICKET Act will require event ticket sellers to display the total ticket price upfront, including all fees, in any advertisement or marketing that lists a ticket price.

25.    The Biden Administration has similarly announced efforts to crack down on junk fees and bring down costs for American consumers by working with federal agencies, Congress, and private companies.[7] In explaining those efforts, the White House noted that junk fees cost American families tens of billions of dollars each year.[8] Indeed, the Government Accountability Office found that ticketing

---

[5] U.S. Senate Committee on Commerce, Science, & Transportation, *Cantwell's TICKET Act to Stop Hidden Fees for Concerts, Sporting Events Heads to Full Senate* (July 27, 2023), https://www.commerce.senate.gov/2023/7/cantwell-s-ticket-act-to-stop-hidden-fees-for-concerts-sporting-events-heads-to-full-senate.

[6] *Id.*

[7] *Biden-Harris Administration Announces Broad New Actions to Protect Consumers From Billions in Junk Fees*, THE WHITE HOUSE (Oct. 11, 2023), https://www.whitehouse.gov/briefing-room/statements-releases/2023/10/11/biden-harris-administration-announces-broad-new-actions-to-protect-consumers-from-billions-in-junk-fees/.

[8] *Id.*

companies charge consumers fees averaging 27 to 31 percent of the ticket's face value.[9]

26.     Similar efforts are happening on the state level as well.  New York enacted a fee transparency law that prohibits these practices in 2022.  S.B. 9461. The New York law requires ticket sellers to include all fees up front, so the amount charged at the end of the transaction must be the same as the initial price. California's Governor Gavin Newsom signed Senate Bill 478 into law in October 2023, which will go into effect July 2, 2024.  The California law will ban advertising a price that is less than the actual price that a consumer will have to pay for a ticket. Tennessee's Governor Bill Lee signed Senate Bill 1043 into law in May 2023, which went into effect July 2023 and requires the seller to disclose all costs and fees to the consumer *prior* to selecting the ticket.

27.     Moreover, Defendant *knowingly* engages in these dark patterns to lure consumers into purchasing tickets that ultimately include junk fees via the Estimated Fees Filter.  By way of example, Defendant does not engage in any of the above dark patterns in New York—where it is required to disclose all fees up front.  When a consumer uses the Estimated Fees Filter for *a New York-based event*, Defendant's initial representations are flawless, and the consumer *pays the price that was first presented*.  The below example demonstrates when a consumer selected two New York Yankees tickets for $36 each, she was ultimately charged $72 (which is exactly $36x2):

---

[9] *Event Ticket Sales: Market Characteristics and Consumer Protection Issues*, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (April 2018), https://www.gao.gov/assets/gao-18-347.pdf.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    28.    Accordingly, Defendant's representations that Defendant accurately

17  presents "estimated fees" are false and misleading.  Despite having the ability to

18  properly portray the additional fees up front, Defendant systematically and

19  intentionally misrepresents what Defendant will ultimately charge consumers.  That

20  is the type of deceptive behavior that the FTC admonishes, and the New York

21  legislature has acted against.

22  **Violations of California's Ticket Sale Law:**

23    29.    Under California Business and Professions Code section 22502.2, it is:

24
25        unlawful for a ticket seller to represent that he or she can
        deliver or cause to be delivered a ticket at a specific price or
26        within a specific price range and to fail to deliver within a
        reasonable time or by a contracted time the tickets _at or_
27        _below_ the price stated.  (emphasis added).

28

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    19

30.     A "ticket seller" is defined as "any person who for compensation, commission or otherwise sells admission tickets to sporting, musical, theatre, or any other entertainment event."  Cal. Bus. & Prof. Code § 22503.

31.     As described above, Defendant's "business model and pricing are designed so that [the] business is successful primarily when [the] sellers are successful."[10]  "[StubHub] make[s] money primarily through fees collected on successfully closed [ticket] sales," which is how the company makes a profit.[11]  For example, "StubHub sold $4.75 billion in tickets [in 2018], taking in $1.1 billion in [ticket] fees."[12]  Accordingly, because Defendant sells admission tickets to entertainment events for commission, it is a ticket seller.

32.     Furthermore, Defendant represents its tickets at one price and guarantees to hold the ticket at that price for ten minutes.  However, as shown above, Defendant systematically fails to deliver on that promise and upcharges consumers within the ten-minute period.

## CLASS ALLEGATIONS

33.     Plaintiff seeks to represent a class defined as all individuals in the United States who purchased event tickets from Defendant's website using the Estimated Fees Filter and Guest Checkout during the applicable statute of limitations period (the "Class").  Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

---

[10] eBay Inc., Annual Report (Form 10-K) (Jan. 31, 2020).

[11] Id.

[12] Ben Sisario, *StubHub Sold to Smaller Rival Viagogo for Over $4 Billion*, THE NEW YORK TIMES (Nov. 25, 2029), https://www.nytimes.com/2019/11/25/business/stubhub-viagogo-ebay-sale.html.

34.     Plaintiff also seeks to represent a subclass defined as all individuals in the state of California who purchased event tickets from Defendant's website using the Estimated Fees Filter and Guest Checkout during the applicable statute of limitations period (the "California Subclass" or "Subclass").  Excluded from the Subclass are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

35.     **Numerosity.**  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant.

36.     **Commonality and Predominance.**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant failed to disclose the total cost of the ticket, including all ancillary fees, prior to the tickets being selected for purchase in violation of California Business and Professions Code section 22502.2; (b) whether the displayed price of Defendant's tickets increases during the purchase process in violation of California Business and Professions Code section 22502.2; (c) whether Defendant's marketing of the ticket prices was false and misleading; (d) whether Defendant's conduct was fair and/or deceptive; and (e) whether Plaintiff and members of the Class and Subclass have sustained damages with respect to the common-law claims asserted, and if so, the proper measure of their damages.

37.    **Typicality.**  The claims of the named Plaintiff are typical of the claims of the Class and Subclass in that the named Plaintiff and the members of the Class and Subclass sustained damages because of Defendant's uniform wrongful conduct, based upon Defendant failing to disclose the total cost of their tickets throughout the online ticket purchase process.

38.    **Adequacy.**  Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class or Subclass members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class and Subclass members will be fairly and adequately protected by Plaintiff and his counsel.

39.    **Superiority.**  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION
### COUNT I
### Violation of California's Ticket Seller Law,
### Cal. Bus. & Prof. Code § 22502.2 *et seq*.

40.    Plaintiff realleges and reincorporates by reference all paragraphs alleged

above.

41.     Plaintiff brings this claim individually and on behalf of the Class and California Subclass against Defendant.

42.     Defendant is a "ticket seller" because it owns and operates StubHub.com, which "sells admission tickets to sporting, musical, theatre, or any other entertainment event" "for compensation [or] commission."  Cal. Bus. & Prof. Code § 22503.

43.     Defendant violated California Business and Professions Code section 22502.2 by "represent[ing] that he or she can deliver or cause to be delivered a ticket at a specific price or within a specific price range and to fail to deliver within a reasonable time or by a contracted time the tickets at or below the price stated or within the range of prices stated," as discussed above.  *See* ¶¶ 14 and 21.

44.     Plaintiff purchased tickets on Defendant's website and was forced to pay Defendant's ancillary fee.  Plaintiff was harmed by paying this extra fee, which was not disclosed to Plaintiff at the beginning of the purchase process, and therefore, is unlawful pursuant to California Business and Professions Code section 22502.2.

45.     On behalf of himself and members of the Class and Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, and to recover two times the contracted price of the ticket and reasonable attorney's fees.  Cal. Bus. & Prof. Code § 22502.3.

## COUNT II
### Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

46.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

47.     Plaintiff brings this claim individually and on behalf of the Class and Subclass against Defendant.

48.     California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  For the reasons discussed above, Defendant has engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

49.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, fraudulent, and unfair conduct.

50.     Defendant has violated the UCL's proscription against engaging in **Unlawful Business Practices** as a result of its violations of California Business and Professions Code section 22502.2; California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9); California's False Advertising Law; and additional violations of common law.

51.     As more fully described above, Defendant's misleading marketing and advertising of the ticket prices are likely to deceive reasonable consumers.  In addition, Defendant has committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating the common law.

52.     Plaintiff and members of the Class and Subclass reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

53.     Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

54.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein as noted above.

55.     Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**.  Defendant's claims, nondisclosures, and misleading statements with respect to the ticket prices, as more fully set forth above, were false, misleading, and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

56.     Plaintiff and members of the Class and Subclass suffered a substantial injury by virtue of buying the tickets that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, and omission about the ticket prices, when the Estimated Fees Filter is turned on.

57.     There is no benefit to consumers or competition from deceptively marketing, and omitting material facts about, the price of the tickets when the Estimated Fees Filter is turned on.

58.     Plaintiff and the members of the Class and Subclass had no way of reasonably knowing that the tickets they purchased were not as marketed or advertised.  Thus, they could not have reasonably avoided the injury each of them suffered.

59.     The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives that exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the Class and Subclass members.

60.     Pursuant to California Business and Professions Code § 17203, Plaintiff and the members of the Class and Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the members of the Class and Subclass; (b) disgorge all revenues

obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

### COUNT III
### Violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*

61.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

62.    Plaintiff brings this claim individually and on behalf of the Class and Subclass against Defendant.

63.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

64.    Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

65.    Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

66.    Defendant violated Civil Code § 1770(a)(5), (a)(7), and (a)(9) by holding out the tickets to be one price, including the fees, but selling the tickets at a higher price.

67.    Defendant failed to adequately disclose the full ticket price when the Estimated Fees Filter is turned on.

68.    Defendant has exclusive and/or superior knowledge of the ticket prices with the included fees, which was not known to Plaintiff or members of the Class or Subclass.

69.    Defendant made partial representations to Plaintiff and members of the Class and Subclass, while suppressing the true price of the tickets when the

Estimated Fees Filter was turned on.  Specifically, by displaying the price of the tickets as purportedly including estimated fees but systematically including additional fees at the end of the checkout process.  Moreover, Defendant affirmatively misrepresented the price of the tickets despite their knowledge of all the fees that would eventually be included in the ticket price.

70.    Plaintiff and the members of the Class and Subclass have suffered harm because of these violations of the CLRA because they have incurred charges and/or paid monies for the tickets that they otherwise would not have incurred or paid.

71.    On August 31, 2023, prior to the filing of this Complaint, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA with respect to the deceptive nature of the Estimated Fees Filter, and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.

72.    Defendant failed to remedy the issues raised in the notice letters. Accordingly, Plaintiff seeks damages from Defendant for its violations of the CLRA.

73.    Injunctive relief is appropriate, and indeed necessary, to require Defendant to provide full and accurate ticket prices so that Plaintiff and members of the Class and Subclass can reasonably rely on Defendant's representations as well of those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

## COUNT IV
### Violation of California's False Advertising Law,
### Cal. Bus. & Prof. Code § 17500, *et seq.*

74.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

1

2

75.     Plaintiff brings this claim individually and on behalf of the Class and Subclass against Defendant.

3

4

5

6

7

76.     Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive members of the Class and Subclass and the public.  As described above, and throughout this Complaint, Defendant misrepresented the ticket prices and does not deliver the tickets at the represented prices when the Estimated Fees Filter is turned on.

8

9

10

11

12

13

77.     By its actions, Defendant disseminated uniform advertising regarding the ticket prices to and across the United States and the State of California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.*  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

14

15

16

17

78.     The above-described false, misleading, and deceptive advertising Defendant disseminated continues to have a likelihood to deceive in that Defendant failed to disclose that the ticket prices included more fees than the Estimated Fees Filter communicated.

18

19

79.     Defendant continues to misrepresent to consumers that the ticket prices have additional fees, despite the Estimated Fees Filter.

20

21

22

23

24

25

26

80.     In making and disseminating these statements, Defendant knew, or should have known, its advertisements were untrue and misleading in violation of California law.  Plaintiff and other members of the Class and Subclass based their purchasing decisions on Defendant's omitted material facts.  The revenue attributable to the tickets sold in those false and misleading advertisements likely amounts to tens of millions of dollars.  Plaintiff and members of the Class and Subclass were injured in fact and lost money and property as a result.

27

28

81.     The misrepresentations and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading

advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

82.     As a result of Defendant's wrongful conduct, Plaintiff and members of the Class and Subclass lost money in an amount to be proven at trial. Plaintiff and members of the Class and Subclass are therefore entitled to restitution as appropriate for this cause of action.

83.     Plaintiff and members of the Class and Subclass seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

### COUNT V
**Fraud**

84.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

85.     Plaintiff brings this claim individually and on behalf of the Class and Subclass under California law.

86.     At the time Plaintiff and members of the Class and Subclass purchased the tickets, Defendant did not disclose, but instead concealed and misrepresented, the full price of the tickets, despite the Estimated Fees Filter.

87.     Defendant affirmatively misrepresented the ticket prices, despite the Estimated Fees Filter, giving the appearance that the tickets were cheaper than they were.

88.     Defendant also knew that its omissions and misrepresentations regarding the ticket prices were material, and that a reasonable consumer would rely upon Defendant's representations in making purchasing decisions.

89.     Plaintiff and members of the Class and Subclass did not know—nor could they have known through reasonable diligence—about the true price of the tickets with the Estimated Fees Filter turned on.

90.     Plaintiff and members of the Class and Subclass would have been reasonable in relying on Defendant's misrepresentations in making their purchasing decisions.

91.     Plaintiff and members of the Class and Subclass had a right to reply upon Defendant's representations as Defendant maintained monopolistic control over knowledge of the true price of the tickets.

92.     Plaintiff and members of the Class and Subclass sustained damages because of their reliance on Defendant's and misrepresentations, thus causing Plaintiff and members of the Class and Subclass to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

## COUNT VI
### Unjust Enrichment

93.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

94.     Plaintiff brings this claim individually and on behalf of the Class and Subclass under California law.

95.     To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

96.     Plaintiff and members of the Class and Subclass conferred benefits on Defendant by purchasing the tickets.

97.     Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and members of the Class and Subclass's purchases of the tickets. Retention of those monies under these circumstances is unjust and inequitable because Defendant failed to disclose that there were hidden fees at the end of the checkout process.  Those omissions caused injuries to Plaintiff and members of the

Class and Subclass because they would not have purchased the tickets if the true facts were known.

98.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class and Subclass are unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgement against Defendant as follows:

(a)     For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

(b)     For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff, the Class on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper;

(h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  April 22, 2024

**BURSOR & FISHER, P.A**.

By:   */s/ L. Timothy Fisher*
            L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
Emily A. Horne (State Bar No. 347723)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        sbogdanovich@bursor.com
        ehorne@bursor.com

*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff.  Plaintiff Brian Hong resides in Sierra Madre, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Central District of California, as Defendant advertised, marketed, manufactured, distributed, and/or sold the tickets at issue to members of the Class and Subclass from this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this twenty-second day of April, 2024.

<u>  /s/ L. Timothy Fisher      </u>
L. Timothy Fisher